IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTWANE L. FOSTER, | ) | Case No. 5:25-cv-00087 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| JAY FORSHEY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

On January 8, 2025, Petitioner Antwane L. Foster (hereinafter "Foster" or "Petitioner"), a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 in the Southern District of Ohio. (ECF Doc. 1). The matter was transferred to the Northern District of Ohio on January 17, 2025. (ECF Docs. 3, 4). The Respondent filed their Return of Writ on March 24, 2025. (ECF Doc. 8). Foster then filed a Traverse on May 20, 2025. (ECF Doc. 11). Respondent has not filed a reply. The matter is therefore ripe.

The District Court has jurisdiction over the petition under § 2254(a). On January 21, 2025, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge to prepare a Report and Recommendation. (ECF Doc. 6). Because the grounds in Foster's petition are procedurally defaulted and excuse is unavailable, I recommend the District Court dismiss his petition.

1

## II.    Factual Background

The Ohio Court of Appeals, Ninth Appellate District, Summit County, set forth the facts on direct appeal. These factual findings are presumed correct unless Foster rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Ninth District presented the facts as follows:

{¶ 2} On July 25, 2020, at approximately midnight, S.A. was attacked at her Kling Street apartment by an unknown assailant. The assailant turned off S.A.'s bedroom light and tackled her on the bed. The assailant touched S.A. underneath her clothing, kissed her on the face and neck, touched her breasts and vagina, choked her when she began to scream, and performed oral sex on her without her consent. After the assailant left, S.A. called the police and was taken to the hospital where a sexual assault kit was performed. Further, a DNA sample was taken from a handprint found near an open window and from S.A.'s underwear and mons area. Two weeks after the incident, S.A. identified Mr. Foster, through a police array, as the assailant with 60% certainty. Subsequently, Mr. Foster turned himself in on a warrant and provided a DNA sample to the police. Mr. Foster's DNA matched the DNA procured from the sexual assault kit and window at S.A.'s apartment.

{¶ 3} Mr. Foster was indicted for: (1) rape, in violation of R.C. 2907.02(A)(2)(B), felonies of the first degree, with a sexually violent predator specification; (2) aggravated burglary, in violation of R.C. 2911.11(A)(1)/(B), a felony of the first degree; (3) kidnapping, in violation of R.C. 2905.01(A)(2)/(A)(4)/(C)(1), felonies of the first degree, with sexual motivation specifications and sexually violent predator specifications; and (4) gross sexual imposition, in violation of R.C. 2907.05(A)(1)/(C)(1), a felony of the fourth degree. Mr. Foster pleaded not guilty and waived his right to a jury trial on the specifications. Prior to trial, the State dismissed one count of rape and one count of kidnapping.

{¶ 4} A jury found Mr. Foster guilty of rape, aggravated burglary, kidnapping, and gross sexual imposition. Further, the trial court found Mr. Foster guilty of the sexual motivation specifications and sexually violent predator specifications. After performing an allied offenses of similar import analysis, the trial court determined the counts for kidnapping and gross sexual imposition merged and the state elected to proceed to sentencing on one count of kidnapping, in addition to rape, aggravated burglary, and the specifications. The trial court sentenced Mr. Foster to a minimum term of 30 years to a maximum term of life imprisonment.

*State v. Foster,* No. 30443, 2023 WL 4622010, *1 (Ohio Ct. App. July 19, 2023).

### III.    State Court History

#### A.    Trial Proceedings

Foster was indicted on four counts on September 1, 2020, by a Summit County Court of Common Pleas grand jury. (ECF Doc. 8-1, pp. 3-4). The indictment included one count of Rape under O.R.C. § 2907(A)(2), 2907.02(B); one count of Aggravated Burglary under O.R.C. § 2911.11(A)(1), 2911.11(B); one count of Kidnapping under O.R.C. § 2905.01(A)(2), 2905.01(C)(1); and one count of Gross Sexual Imposition under O.R.C. § 2907.05(A)(1), 2907.05(C)(1). (*Id.*). Foster pled not guilty to the charges at his arraignment on September 10, 2020. (*Id.* at p. 5). The grand jury then returned a supplemental indictment on September 22, 2020, adding an additional count of Rape, with a sexual violent predator specification under O.R.C. § 2941.148(A); and two additional counts of Kidnapping, with sexual motivation specifications under O.R.C. 2941.147(A) and sexually violent predator specifications under O.R.C. § 2941.148(A). (*Id.* at pp. 6-8). Foster pled not guilty to the charges in the supplemental indictment on October 5, 2020. (*Id.* at p. 9).

On July 14, 2022, the trial court granted the State of Ohio's Motion to Dismiss on one count of Rape and one count of Kidnapping, (*id.* at p. 10), and Foster waived his right to jury trial as to the Sexual Motivation Specifications and Sexually Violent Offender Specifications (*id.* at pp. 11-12). On June 16, 2022, a jury returned guilty verdicts to Count One, Rape; Count Two, Aggravated Burglary; Counts Three and Four, Kidnapping; and Count Five Gross Sexual Imposition. (*Id.* at pp. 13-14). The jury further found that Foster committed the offenses of Kidnapping with a sexual motivation. (*Id.*).

On August 16, 2022, the trial court found that Foster was a sexually violent predator. (*Id.* at p. 16). The court then performed a merger analysis and determined that Counts Three, Four,

and Five merged for purposes of sentencing. (*Id.* at p. 17). The State of Ohio elected to proceed to sentencing on Count 4. (*Id.*). The Trial Court sentenced Foster to a minimum of not less than 15 years and a maximum of life imprisonment on Count One; to a minimum of not less than 11 years and a maximum of 16.5 years on Count Two; and not less than 15 years and a maximum of life imprisonment on Count Four. (*Id.* at pp. 17-18). The sentences in Counts One and Four were to be served consecutively with each other, and concurrently with the sentence in Count Two, for a total stated sentence of a minimum term of thirty years to a maximum term of life imprisonment. (*Id.* at p. 18). As to Count Two, Foster was subject to supervision on post-release control for a mandatory period of up to five years, but not less than two years. (*Id.*). Foster was also ordered to register as a Tier III Sex Offender and was advised of his lifetime reporting requirements. (*Id.* at p. 19).

## B.    Direct Appeal

On September 13, 2022, Foster filed his Notice of Appeal with Ohio's Ninth District Court of Appeals. (*Id.* at pp. 30-38). He filed his appellant's brief on December 30, 2022, raising the following three assignments of error:

> **Assignment of Error No. 1:** Under a sufficiency analysis, Antwane's convictions were not based upon sufficient evidence as a matter of law, in violation of Antwane's Federal and Ohio Constitutional rights.
>
> **Assignment of Error No. 2:** Antwane's convictions were against the manifest weight of the evidence, in violation of Antwane's Federal and Ohio Constitutional rights.
>
> **Assignment of Error No. 3:** Antwane was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution; and Article 1, Section 10, Ohio Constitution.

(*Id.* at p. 42). The State of Ohio filed its Brief of Appellee on February 8, 2023. (*Id.* at pp. 64-93). On July 19, 2023, the state appellate court affirmed Foster's conviction and sentence. (*Id.* at pp. 94-105; *see also Foster*, 2023 WL 4622010, at *1.

### C.     Appeal to the Ohio Supreme Court

On October 3, 2023, Foster filed a Motion for Leave to File Delayed Appeal with the Ohio Supreme Court, claiming he did not file in a timely manner because he had not been informed by the Appellate Court or his counsel of the decision in his case. (ECF Doc. 8-1, pp. 106-21). The State of Ohio filed their Opposition to Appellant's Motion for Leave to File Delayed Appeal on October 13, 2023. (*Id.* at pp. 124-26). The Ohio Supreme Court denied Foster's motion on December 12, 2023. (*Id.* at p. 127; *see also State v. Foster*, 223 N.E.3d 485 (Ohio 2023) (Table)).

## IV.     Post-Conviction Proceeding: Rule 26(B) Application for Reopening

On October 6, 2023, as his Motion for Leave to File Delayed Appeal was pending before the Ohio Supreme Court, Foster moved the Ninth Appellate District of Ohio to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B), claiming he had been deprived of the effective assistance of appellate counsel. (*Id.* at pp. 128-55). In support of his claim of ineffective assistance of appellate counsel, Foster raised three assignments of error that he felt counsel should have raised on appeal:

1.     Appellant's conviction was not supported by sufficient DNA evidence.

2.     The DNA test used in this case was outdated and unreliable, and its allowance absent any further testing resulted in the ineffective assistance of counsel, abuse of discretion by the Trial Court and prosecutorial misconduct.

3.     The Court erred in failing to merge the Rape, Aggravated Burglary, and Kidnapping charges.

5

(*Id.*). The State of Ohio did not file a response, and on April 3, 2024, the Ninth Appellate District of Ohio denied his application for reopening "because the Appellant has not established a genuine issue of ineffective assistance of appellate counsel." (*Id.* at p. 158).

Foster filed a Notice of Appeal of the denial of his application for reopening with the Ohio Supreme Court on May 6, 2024, raising three propositions of law:

> Proposition of Law No. 1: Appellant's conviction is not supported by the evidence.
>
> Proposition of Law No. 2: The DNA test used in this case was outdated and unreliable, and its allowance absent any further testing resulted in the ineffective assistance of counsel, abuse of discretion by the trial court and prosecutorial misconduct.
>
> Proposition of Law No. 3: The Court erred by failing to merge the Rape, Aggravated Burglary and Kidnapping [*sic*].

(*Id.* at p. 162). On July 9, 2024, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). *See State v. Foster*, 237 N.E.3d 234 (Ohio 2024) (Table).

## V.    Federal Habeas Corpus Petition

Foster brings six grounds for relief in his Petition for Writ of Habeas Corpus, timely filed in this Court on January 8, 2025. (ECF Doc. 1).

> **GROUND ONE:** Mr. Foster's convictions were not based on sufficient evidence as a matter of law.
>
> Supporting Facts: The DNA evidence is not indicative of "threat of force" and SA's "testimony" could not convince the average mind that the sexual encounter was a result of force or threat by Mr. Foster.
>
> **GROUND TWO:** Petitioner's convictions were against the manifest weight of the evidence.
>
> Supporting Facts: Convictions for rape, gross sexual imposition, and kidnapping were against the manifest weight of the evidence. Specifically, petitioner argues no

rational trier of fact could find petitioner guilty of these crimes based upon S.A.'s testimony and identification of petitioner.

**GROUND THREE:** Petitioner was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth amendments of the U.S. Constitution and Article 1, section 10, Ohio Constitution.

Supporting Facts: Petitioner was denied the effective assistance of counsel. Petitioner argues his counsel failed to: (1) obtain and present evidence Petitioner and the victim knew each other prior to the incident; and (2) object to the admission of Petitioner's jail calls due to improper foundation.

**GROUND FOUR:** Petitioner's convictions is [sic] not supported by sufficient DNA evidence.

Supporting Facts: The DNA evidence presented here was insufficient: Before finding sufficient evidence of the presence of [saliva], courts ought to insist that even positive AP spot test results be confirmed through alternative testing techniques such as p30 testing.

**GROUND FIVE:** The DNA test used in this case was outdated and unreliable, and its allowance absent by any further testing resulted in the ineffective assistance of counsel, abuse of discretion by the trial court, and prosecutorial misconduct.

Supporting Facts: The DNA evidence was significantly tainted by the actions of the prosecutor. Beyond this, the doctor, the State, the court and defense counsel were all complicit in allowing an ineffective, unreliable and outdated test (by over twenty years) to admitted into evidence absent further testing. The test used here was the acid phosphate spot test.

**GROUND SIX:** The court erred by failing to merge the Rape, Aggravated Burglary, and Kidnapping charges.

Supporting Facts: Petitioner invokes these double jeopardy protections, characterizing his Rape, Aggravated Burglary, and Kidnapping convictions as allied offenses that should have triggered merger.

(*Id.* at pp. 5-12).

## VI.    Federal Habeas Corpus Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Foster's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28

U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As a result, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted . . . unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S.

362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). Even so, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

9

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VII. Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are unavailable for federal habeas corpus review. *Bonnell v.*

*Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A. Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called on to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism to do so now, the claim he failed to

present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### B. Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting their claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*,

that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman*, 501 U.S. at 750; *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

**VIII.  Discussion**

Foster raises six grounds for relief in his petition before this Court. (ECF Doc. 1, pp. 5-12).

   **A.  This court may not reach the merits of Foster's Grounds for Relief One, Two, Three, Four, Five and Six because they were procedurally defaulted in state court.**

   **1.  Grounds for Relief One, Two, and Three.**

In his First Ground for Relief, Foster contends that his convictions were not based on sufficient evidence as a matter of law. (*Id.* at p. 5). In his second Ground for Relief, he argues his convictions were against the manifest weight of the evidence. (*Id.* at p. 7). In his Third Ground for Relief, he claims he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the U.S. Constitution. (*Id.* at p. 8). Each of these claims were raised

13

on direct appeal (ECF Doc. 8-1, p. 42), but were overruled by Ohio's Ninth District Court of Appeals on July 19, 2023. (*Id.* at p. 104). Foster did not file a timely appeal of the state appellate court's decision with the Ohio Supreme Court, but on October 3, 2023, he did file a Motion for Leave to File Delayed Appeal, indicating he had not filed a timely appeal because he "was never informed by his counsel or the Court that a decision had been made in his case." (*Id.* at pp. 106-09). The Ohio Supreme Court denied his Motion for File Delayed Appeal, and his case was dismissed on December 12, 2023. (*Id.* at p. 127). Respondent argues that because Foster was not allowed to file his delayed appeal to the Ohio Supreme Court, Grounds for Relief One, Two, and Three are defaulted. (ECF Doc. 11, p. 4).

In analyzing procedural default under the *Maupin* test, the court first must determine whether the Petitioner failed to comply with a state procedural rule, and whether that state court actually enforced that procedural bar. *Maupin*, 785 F.2d at 138. Here, while Foster timely presented the claims giving rise to his Grounds for Relief One, Two, and Three in his direct appeal to the Ninth Appellate District, once the Ninth Appellate District rejected the claims Foster failed to appeal the decision to the Ohio Supreme Court within 45 days, as required under Ohio Supreme Court Rule of Practice 7.01(A)(1). The Ohio Supreme Court enforced its procedural rule when it denied his Motion for Leave to File a Delayed Appeal. (ECF Doc. 8-1, p. 127; *see also Foster*, 223 N.E.3d 485). Thus, the first and second prongs of the *Maupin* test are satisfied.

I next must consider whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim. It is well-settled that the enforcement of the timeliness requirement in Rule 7.01(A)(1) constitutes an independent and adequate state ground that precludes habeas review under *Maupin*. *See Davenport v. Fender*, No.

14

1:20-CV-0561, 2023 WL 1785492, at *13 (N.D. Ohio Jan. 5, 2023) (holding that Ohio Supreme Court's denial of motion for leave to file delayed appeal constituted adequate and independent state ground under *Maupin* and resulted in procedural default), *report and recommendation adopted*, 2023 WL 1782121 (N.D. Ohio Feb. 6, 2023). Accordingly, the third prong of the *Maupin* test is met.

Foster's procedural default can be excused if he demonstrates either cause or prejudice or that failure to consider his claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Foster argues that cause exists because his appellate counsel failed to timely notify him of the Ninth Appellate District's decision. (ECF Doc. 11, pp. 4-5). "[I]n order to demonstrate that he suffered prejudice as a result of this failure of counsel, a defendant must demonstrate that he 'would have timely appealed' to the Ohio Supreme Court had he received timely notice." *Calhoun v. Kelly*, No. 1:10 CV 2083, 2012 WL 629722, at *2 (N.D. Ohio Feb. 24, 2012), quoting *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006). "[I]f the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is greater than the period allotted by state law for the timely filing an appeal—here, forty-five days—the defendant fails to demonstrate that he or she 'would have timely appealed' the decision but for the counsel's deficient failure to notify the defendant of the decision." *Smith*, 463 F.3d at 435.

In his application for a delayed appeal, Foster contended that he did not learn of the Ninth Appellate District's decision until "over three weeks after the decision was made." (ECF Doc 8-1, p. 108). As the decision was made July 19, 2023, it is reasonable to presume that he learned sometime between August 9, 2023 and August 15, 2023, at which point four weeks would have passed. Foster did not file his Motion for Leave to File a Delayed Appeal until October 3, 2023

(*Id.* at p. 122), meaning at least 48 days would have elapsed between his learning of the decision and his filing of the motion. Foster thus cannot show he would have timely appealed the Ninth Appellate District's decision had his counsel promptly notified him of the decision, and his appellate counsel's alleged failure therefore cannot constitute cause to excuse his procedural default. *See Calhoun*, 2012 WL 629722, at *2 (holding that petitioner did not demonstrate cause to excuse procedural default where petitioner waited more than 45 days after allegedly receiving belated notice of appellate decision to file motion for delayed appeal in Ohio Supreme Court); *Davidson v. Warden, Warren Corr. Inst.*, No. 2:18-CV-00495, 2019 WL 1109566, at *5 (S.D. Ohio Mar. 11, 2019) (holding that attorney's alleged failure to timely notify petitioner of appellate decision did not constitute cause to excuse procedural default where petitioner received notice before deadline to appeal expired and waited 91 days to file motion for delayed appeal).

It is worth noting as well that Foster's Notice of Appeal and Motion for Leave to File the Delayed Appeal failed to comply with the Ohio Supreme Court's rules requiring a sworn affidavit setting forth the reasons for his delay. (ECF Doc 8-1, at pp. 106-23). He failed to offer any explanation for his noncompliance with Rule 7.01(A)(4)(ii), so this represents an additional reason for procedural default. As no cause or prejudice has been demonstrated, Foster's procedural default of Grounds for Relief One, Two, and Three cannot be excused.

### 2. Grounds for Relief Four, Five, and Six.

In his Fourth Ground for Relief, Foster asserts that his convictions were not supported by sufficient DNA evidence. (ECF Doc. 1, p. 10). In his Fifth Ground for Relief, he contends that the DNA test used in his case was outdated and unreliable, and its admission, absent any further testing, resulted in ineffective assistance of trial counsel, abuse of discretion by the trial court, and prosecutorial misconduct. (*Id.*). In his Sixth Ground for Relief, Foster argues that the court

erred by failing to merge the Rape, Aggravated Burglary, and Kidnapping charges. (*Id.*). Petitioner did not raise any of these claims on direct appeal. (*See* ECF Doc. 8-1, p. 42 (listing assignments of error on direct appeal)). He did, however raise these issues as underlying claims to the state appellate court in his Rule 26(B) application to reopen on the basis of ineffective assistance of appellate counsel for failing to raise these claims on direct appeal. (*Id.*, at pp. 131-32).

Noting that Foster failed to raise these habeas claims in his direct appeal, Respondent argues he is barred from doing so now due to the doctrine of res judicata. (ECF Doc. 8, p. 11). Respondent argues that Foster did not fairly present these grounds to the state court; instead he presented them as part of his ineffective assistance of appellate counsel claims in his Rule 26(B) application. (*Id.* at p. 12, citing *Davie v. Mitchell,* 547 F.3d 297, 312 (6th Cir. 2008) ("a rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim"). Thus, these grounds were unexhausted and are now procedurally defaulted. (*Id.*). Respondent further argues that, in appealing the appellate court's rejection of his ineffective assistance of appellate counsel claims, Foster did not raise appellate counsel claims to the Ohio Supreme Court; rather, he improperly presented the three substantive issues underlying his ineffective assistance argument as propositions of law. (ECF Doc. 8, p. 12). As the substantive issues were not fairly presented in his direct appeal, the Ohio Supreme Court lacked jurisdiction to consider them. (*Id.* at pp. 12-13). Since the Ohio appellate courts were denied the opportunity to consider these substantive claims because Foster did not fairly present them, and his inability to do so now, they are procedurally defaulted. (*Id.* at p. 13).

In analyzing procedural default under the *Maupin* test, the Court must first determine that the Petitioner failed to comply with a state procedural rule, and that the state court actually

enforced that procedural bar. *Maupin*, 785 F.2d at 138. Here, claims appearing on the face of the record must be raised on direct appeal or they will be barred by Ohio's res judicata rule. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."). Petitioner violated the doctrine of res judicata by failing to raise claims relating to the testing of DNA evidence or the court's determination with regard to merger of the charges for purposes of sentencing despite these claims being based on evidence that appears on the face of the record. (*See* ECF Doc. 8-1, pp. 525-63; 742-67). This failure to comply with the state procedural rule satisfies *Maupin's* first prong.

The second prong of the *Maupin* test requires the state court to enforce the procedural rule as the basis for its refusal to address the petitioner's claim. *Maupin*, 785 F.2d at 138. The state appellate court enforced the rule when Foster attempted to raise the three relevant claims here in a Rule 26(B) Application for Reopening, the procedure in Ohio for raising claims of ineffective assistance of appellate counsel. In its Journal Entry addressing Foster's Application for Reopening the Court wrote:

> An application for reopening is an improper vehicle to allege trial court errors because App.R. 26(B) only provides for reopening based on ineffective assistance of appellate counsel. *See*, App.R. 26(B)(1), (B)(2)(c). Thus, to the extent [Foster] has attempted to challenge errors on the part of his trial court directly and without regard to his counsel's performance, his arguments are improper, and this Court will not address them.

(ECF Doc. 8-1, p. 157). This enforcement of the state's procedural rule satisfies the second prong. Further, "it is well settled that Ohio's res judicata rule is an adequate and independent state ground to preclude federal habeas relief, satisfying *Maupin*'s third prong. *McKnight v. Warden, Pickaway Correctional Institution,* Case No. 2:23-cv-426, 2024 WL 2977394, *16 (S.D. Ohio, June 13, 2024), citing *Hand v. Houk,* 871 F.3d 390, 409 (6th Cir. 2017).

18

As the first three prongs of the *Maupin* test have been met Foster's Grounds for Relief Four, Five, and Six are procedurally defaulted absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Maupin*, 785 F.2d at 138.

Before addressing that issue, however, the Court turns to Petitioner's inclusion of this claim in his Rule 26(B) application for reopening. Instead of raising this claim on direct appeal, Petitioner raised it in his Rule 26(B) application to reopen based on ineffective assistance of appellate counsel. (ECF No. 8-1, at pp. 128-42). But doing so failed to preserve the claim for habeas review because the only claims that are preserved in a Rule 26(B) application are claims of ineffective assistance of appellate counsel. *McKnight*, 2024 WL 2977394 at *17. In other words, enumerated instances of ineffective assistance of appellate counsel raised in a Rule 26(B) application, such as the failure to challenge the testing of DNA evidence or merger of criminal counts for purpose of sentencing, are not preserved as freestanding claims because "'the two claims are analytically distinct.'" *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 218 (6th Cir. 2019), quoting *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). When a petitioner files a Rule 26(B) application with the state appellate court, it preserves for habeas review *only* the ineffective assistance of appellate counsel claim. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) (internal quotation and marks omitted). Otherwise, allowing a defendant to raise a substantive claim in a Rule 26(B) application "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.* Foster, therefore, did not preserve the underlying claims by including them in his Rule 26(B) application.

Returning to the default of his claims due to Foster's failure to fairly present them in state courts, he does not offer any cause to excuse the procedural default of Grounds for Relief Four, Five, and Six. (*See generally* ECF Doc. 11). To excuse the default, "the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). To establish cause, a petitioner must show that "some objective factor external to his defense impeded [the petitioner's] ability to comply with the state's procedural rule." *Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014). The petitioner bears the "burden of showing cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). As Foster has offered no such cause and prejudice to excuse the default, Grounds for Relief Four, Five, and Six are procedurally defaulted.

### 3. Foster has failed to establish manifest injustice to overcome procedural default.

To excuse procedural default and prevent a fundamental miscarriage of justice, the petitioner must demonstrate he is actually innocent. *Dufresne v. Palmer,* 876 F.3d 248, 255-56 (6th Cir. 2017). To demonstrate actual innocence a petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo,* 513 U.S. 298, 316 (1995). A showing of actual innocence must rely on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.*, at 324. A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. (*Id.* at 329).

20

Foster makes no substantial argument that he is actually innocent. Thus, there can be no disagreement amongst reasonable jurists that Foster has failed to present any evidence that no juror would have found him guilty beyond a reasonable doubt. Thus, there is also no debate as to whether Foster has failed to make a showing of actual innocence sufficient to excuse the procedural default of his claims.

Rather, Foster argues that he should not be denied de novo review of his claims owing to procedural default because the delay in his filing were not his fault, but this contention misunderstands the nature of manifest injustice in the context of habeas review. (ECF Doc. 11, p. 5). As there is no new evidence to consider, Foster's argument for manifest injustice fails, and his Grounds for Relief One, Two, Three, Four, Five, and Six are procedurally defaulted. I therefore recommend the District Court dismiss his petition on the basis of procedural default of all claims.

## VIII.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, it is well-established that a petitioner must provide a full and fair presentation of his claims in the state court on the same grounds as those presented in federal court. *O'Sullivan*, 526 U.S. at 845. As discussed above, Foster has procedurally defaulted Grounds for Relief One, Two, Three, Four, Five, and Six raised in this petition and has not shown that he is entitled to excuse that default. Thus, if the District Court accepts my recommendations, Foster will not be able to show that my conclusions in this Report and Recommendation are debatable. I therefore recommend that no certificate of appealability issue in this case.

## IX.     Recommendation

For these reasons, I recommend dismissing Foster's federal habeas corpus petition with Grounds One, Two, Three, Four, Five, and Six as procedurally defaulted. I further recommend he be denied a certificate of appealability.


Dated: July 23, 2025

Reuben J. Sheperd
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

22

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entire report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).